IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MARY A. EPPS,                           § | |
|     PLAINTIFF,                         § | |
|                                                § | |
| v.                                              § | CIVIL ACTION NO. 4:08-CV-407-A |
|                                                § | |
| MICHAEL J. ASTRUE,                 § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT.                       § | |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

A.   STATEMENT OF THE CASE

Plaintiff Mary A. Epps filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Epps applied for disability insurance benefits and SSI on March 16, 2004, with an alleged disability onset date of January 22, 2003. (Tr. 22). Epps remained insured for purposes of disability insurance benefits through June

30, 2003.[1]  (Tr. 22, 90B).

After her applications were denied initially and on reconsideration, Epps requested a hearing before an administrative law judge (the "ALJ").  The ALJ initially issued an unfavorable decision in 2006, which was vacated by the Appeals Council.  (Tr. 402, 414).  On remand, ALJ James Wendland held a de novo hearing on August 30, 2007, which Epps and her non-attorney representative attended.  (Tr. 537).  On October 18, 2007, the ALJ issued another unfavorable decision in which he found that Epps was not disabled because she was capable of performing a modified range of light work existing in significant numbers in the national economy.  (Tr. 20-30).  The Appeals Council denied Epps's request for review of this decision, leaving it to stand as the final decision of the Commissioner.  (Tr. 4).

B.      STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments that is

---

[1] Disability must be established on or before that date to establish entitlement to disability insurance benefits.  *See generally Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 n.1 (5th Cir. 1981).  This date does not affect a claim for SSI benefits; however, SSI benefits cannot be paid for the time preceding an application for benefits even if disability began earlier. *See* 20 C.F.R. § 416.335.

severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th

Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUES

   1.   Whether the residual functional capacity assessment is supported by substantial evidence; and

   2.   Whether the ALJ's decision at the fifth step of the sequential evaluation process is supported by substantial evidence.

D.   ADMINISTRATIVE RECORD

Epps has a high-school education and has worked as a desk clerk, dietary aide, classroom attendant, and cashier. She was thirty-eight years old on her alleged disability onset date. (Tr. 28-29, 105, 134). Epps claimed to be disabled as a result of complications from thyroid surgery, hepatitis C, cervical nerve damage, carpal tunnel syndrome, depression, and anxiety. (Tr. 128).

The ALJ found that Epps had not engaged in substantial gainful activity since January 22, 2003, and that she had the following severe impairments: hypothyroidism and major depression. (Tr. 23). The ALJ found no impairment or combination of impairments meeting or equaling any listed impairment. Based on a review of the entire record, the ALJ found that Epps retained the residual functional capacity (RFC) to perform light work, except she should not:

- climb stairs and ramps more than occasionally;
- climb scaffolds, ladders, and ropes or balance;

- walk more than twenty minutes at a time without an opportunity to sit;
- stand more than one hour at a time without an opportunity to sit;
- stand or walk for more than four hours of an eight-hour workday;
- push or pull with her feet more than occasionally;
- handle or finger objects more than frequently;
- work at unguarded heights or near unguarded hazardous mechanical equipment;
- work with more than a mildly decreased ability to maintain concentration and attention;
- do more than the lower end of detailed instructions;
- have more than superficial interaction with the public; or
- do repetitive up and down neck movements more than occasionally.

(Tr. 23).

The ALJ presented the RFC assessment to vocational expert Jerold Hildre, who testified that these work-related limitations were incompatible with the performance of Epps' past relevant work. (Tr. 28, 566). But the vocational expert testified that there was other work that a person with these limitations could perform. Examples included work as a parking lot cashier, with 130,000 jobs available in the national economy, or laundry folder, with 109,000 jobs available in the national economy. (Tr. 566-67). The vocational expert affirmed that his testimony was not in conflict with the Dictionary of Occupational Titles (DOT). (Tr. 567). Based on the vocational expert's testimony, the ALJ concluded that Epps was capable of performing other work existing in significant numbers in the national economy. (Tr. 29).

E.   DISCUSSION

1.   Residual Functional Capacity

Epps asserts that the RFC assessment is unsupported by substantial evidence. More specifically, she asserts that the ALJ's assessment of her handling and fingering limitations is erroneous and contrary to the record.

Epps complains that the ALJ found in his first decision that she could not handle or finger objects on a frequent basis, but in his decision after remand, he found that she should not handle or finger objects more than frequently. (Tr. 23, 408). Epps argues that there is no change in the medical record or other evidence to explain this difference or why the ALJ found intervening improvement in her handling or fingering ability.

The ALJ addressed this discrepancy on the record during the second administrative hearing. (Tr. 548). He explained that he had intended to limit Epps to no more than frequent handling or fingering in his previous decision, but his instructions were typed up incorrectly and that is why the first decision did not accurately reflect his findings. (Tr. 548). The ALJ also pointed out that his intent was clear from the transcript of the first administrative hearing. During the first hearing, the vocational expert testified that a hypothetical person limited to a modified range of light work, including handling or fingering not more than frequently, could perform Epps' past relevant work as a dietary clerk and the ALJ in fact ended his first decision at Step Four of the sequential evaluation process based on his determination that Epps could perform her previous job as a dietary clerk. (Tr. 409, 609-10). The ALJ adequately explained why his first decision contained more restrictive handling and fingering requirements than those included in his second decision.

The ALJ also addressed the evidence related to Epps' complaint that she had limited use of her hands. The ALJ noted that Epps was diagnosed with carpal tunnel syndrome, but there were no objective findings to support her complaints after September 2003 and the medical expert had indicated that her symptoms could be attributable to her failure to take her calcium supplement as directed. (Tr. 27). The medical expert also testified during the second hearing that carpal tunnel

syndrome would interfere with gripping, grasping, and fingering, but he declined to offer an opinion on how often that would occur. (Tr. 562). The medical expert conceded that Epps' complaints of increased symptoms with frequent use of her hands was a legitimate complaint. (Tr. 563). The ALJ limited Epps' use of her hands to no more than frequent handling and fingering.

Epps has not demonstrated that the ALJ's assessment of her RFC, particularly her handling and fingering abilities, is unsupported by substantial evidence or a result of legal error.

2.      Vocational Evidence

Epps contends that the Commissioner did not meet his burden of proof at the fifth step of the sequential evaluation process because the ALJ relied on vocational expert testimony that conflicts with the DOT. The Social Security Administration issued Ruling 00-4p to clarify the use of vocational experts and other occupational information in the disability determination process. *See generally* SOCIAL SECURITY RULING 00-4p. Ruling 00-4p places an affirmative duty on the adjudicator to inquire into possible conflicts with the DOT. Although Ruling 00-4p indicates an agency policy of placing primary reliance on the DOT, the Ruling cautions that neither the DOT nor the vocational expert's evidence will automatically "trump" in cases of conflict, and vocational experts may be used at Steps Four and Five to resolve complex vocational issues. *See id.* The Fifth Circuit has adopted a similar prudent approach and holds that neither the DOT nor the vocational expert evidence is *per se* controlling: When faced with a conflict between the vocational expert and the DOT, the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis to do so. *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

The ALJ found Epps was capable of a modified range of light work, and the vocational

expert testified that a person of Epps' age, education and RFC would be capable of working as a parking lot cashier or a laundry folder. The vocational expert also affirmed that his testimony was consistent with the DOT, which classifies both jobs as requiring light exertion. DICTIONARY OF OCCUPATIONAL TITLES § 211.462-010  (rev. 4th ed. 1991)(defining cashier job demands); *Id*. § 369.687-018 (defining job demands for laundry folder).

Epps contends that there is a conflict because the DOT reflects that the jobs demand light exertion, but she is unable to perform a full range of light work activity. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and even if the weight lifted is very little, a job is also in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). Frequent lifting or carrying has been construed to require standing or walking, off and on, for a total of six hours in an eight-hour workday. SOCIAL SECURITY RULING 83-10. To be able to perform the full range of work within a given exertional level, the claimant must be able to perform all or substantially all occupations within that level. *See id.*  In comparison, the ALJ found Epps was limited to standing or walking for four hours in an eight-hour workday.

There is some initial appeal in Epps' argument that an implicit conflict exists between the vocational expert's testimony and the DOT given the basic definition of light work, but closer inspection of the administrative record reveals no actual conflict that has worked to her prejudice. Ruling 00-4p recognizes that the DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as performed in a specific setting, while

a vocational expert may be able to provide more specific information about a job or occupation. *See* SOCIAL SECURITY RULING 00-4p. The Fifth Circuit also recognizes that the value of a vocational expert is the expert's familiarity with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986). Using that expertise, the vocational expert considered a worker of Epps' age, education, and RFC, and testified that there were at least two occupations, each reflecting thousands of jobs, that would be compatible with this vocational profile. *See* SOCIAL SECURITY RULING 83-12 (recognizing usefulness of vocational expert assistance where claimant's exertional RFC does not coincide precisely with the definition of any one exertional range). Moreover, Epps' representative was given an opportunity to question the vocational expert at the hearing, but did not challenge the vocational expert's testimony with respect to the exertional demands of the jobs identified. The Fifth Circuit has cautioned against allowing a claimant to scan the record for implied or unexplained conflicts between expert witness testimony and the voluminous provisions of the DOT and then present the conflict as reversible error when the conflict was not considered sufficient to merit adversarial testing during the administrative hearing. *Carey*, 230 F.3d at 146-47.

The vocational expert's testimony constitutes substantial evidence that Epps is capable of performing other work existing in significant numbers in the national or regional economy, which satisfies the Commissioner's burden at Step Five of the sequential evaluation process.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until April17, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until April 17, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MARCH 27, 2009.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE